K-MART DISCOUNT STORES, Movant,

v.

Dixie SCHROEDER and Workers' Compensation Board, Respondents.

Supreme Court of Kentucky.

Nov. 24, 1981.

Thomas L. Ferreri, Charles E. Lowther, Mills, Mitchell & Turner, Madisonville, for movant.

Leland Monhollon, P.S.C., Madisonville, Gerald V. Roberts, Director Workers' Compensation Bd., Frankfort, for respondents.

STERNBERG, Justice.

This is a workers' compensation case. The Workers' Compensation Board found the respondent, Dixie Schroeder, totally, occupationally disabled and entitled to benefits. On appeal to the Hopkins Circuit Court, the opinion and award of the Board were reversed. On appeal to the Court of Appeals of Kentucky, the judgment of the circuit court was reversed and the award of the Workers' Compensation Board was affirmed. This court granted review on April 28, 1981, and reverses the Court of Appeals and affirms the judgment of the Hopkins Circuit Court, the result being to deny respondent's claim for workers' compensation.

The respondent, Dixie Schroeder, commenced working for the movant, K-Mart Discount Stores, as a full-time saleslady when it first opened the store in April 1976. She broke her ankle on June 13, 1977, and was off from work until September 26, 1977. By reason of her inability to be on her feet for extended periods of time, she ceased working for K-Mart on October 4, 1977. K-Mart operates in a one-story building located in the Madisonville Square Shopping Center, among a cluster of about 20 other stores. The parking lot for the shopping center is large enough to accommodate at least 975 automobiles. K-Mart has, however, provided and designated a specific area in the north end of the parking lot in which its employees were requested to park their cars. On June 13, 1977, at about 11:45 a. m., Schroeder, on her way to work, could not find any space in the designated area to park so she parked her car in the area commonly used by persons shopping in the center and at a point about 40 or 50 feet from the front door of the K-Mart store. Schroeder then started walking toward the store when she stepped in a hole in the parking lot, a distance of about 20 feet from a driveway. She fell to the ground, breaking her left ankle. The driveway between the parking lot and the store building was for two-way vehicular traffic and ran the complete distance from the entrance to the parking lot off Highway 85 to the extreme south building occupied by the Sears Catalog Store.

The pivotal question is whether respondent fell and received her injury on the operating premises of K-Mart Discount Stores.

The leasing agreement under which K-Mart operates provides for the owner to have total maintenance responsibility for sidewalks, parking lot, parking lot lights, sweeping, snow removal, restriping, and landscaping. The significance of the leasing agreement between the owner of the shopping center and K-Mart relates to control of the area in the parking lot where Schroeder fell and was injured.

In *Smith v. Klarer Company*, Ky., 405 S.W.2d 736 (1966), and in *Harlan Appalachian Regional Hospital v. Taylor*, Ky., 424 S.W.2d 580 (1968), this court fixed liability on the basis of control of the area being in the employer. Not so in the instant case, as Schroeder fell in an area of the parking lot that was under the control of the owner of the shopping center and not under the control of K-Mart.

We have been asked to further expand on the "operating premises" rule. The "operating premises" rule is an outgrowth of liberal construction given to the Workers' Compensation law (KRS 342.004) and the "going and coming" rule, which itself is an extension of the industrial hazard theory.

In *Ratliff v. Epling*, Ky., 401 S.W.2d 43 (1966), in speaking to the "going and coming" rule, we said:

"... It may be generally stated that (in the absence of the performance of some employment duties) the employee is *not* covered if he is not on the premises of the employer...."

On the other hand, we have not adopted the converse rule (which generally prevails) that the employee is automatically covered simply because the accident occurred on the employer's premises. . . ." Refusing to be bound by either of these generalizations, we stated, "We are not willing, however, to accept the *boundary line* of the employer's property as the proper point at which to differentiate between liability or nonliability." We then proceeded to search for a proper theory on which liability could be related to an injury received on or off of the employer's premises. In doing so, we were impressed by, and followed, the lead of the Pennsylvania courts as laid down in *Young v. Hamilton Watch Co.*, 158 Pa.Super. 448, 45 A.2d 261 (1946), in which a distinction was made between premises and property of the employer, as follows: "It was held that where the injury did not occur on the 'operating premises' of the employer, compensation would be denied." This court related the "operating premises" rule to "work connected activity" and to the implied theory of "operating premises," both of which, in prior instances, this court had followed. We then wrote in *Ratliff*, supra, "In our opinion the 'operating premises' test is a fair one and most consistent with the trend of our decisions, and we hereby adopt it."

In *Smith v. Klarer Company*, supra, this court again considered the propriety of the "operating premises" rule. An employee had fallen on a sidewalk in front of her employer's place of business. The sidewalk was used by the general public and was owned and maintained by the employer, whose trucks ran across it to a loading dock by the employees' entrance. We quoted liberally therein from *Ratliff*, supra, and taking heed of the statutory admonition that the workers' compensation law be liberally construed on matters of law, we found the employer liable under the "operating premises" rule "because the employees, more than other segments of the public, necessarily had to use the sidewalk or part of it to personally gain access to the place of their work, and the sidewalk was in the *control* of the employer, thus making a fall

upon it a risk peculiar to the employment." (Emphasis added.)

The distinguishing feature in the subject action is that the injury did not occur on a parking area owned, maintained, or controlled by the employer.

In *Harlan Appalachian Regional Hospital v. Taylor*, supra, we were again confronted with the question of what constitutes "operating premises." This court held that a parking lot owned, operated, and maintained by an employer for the use of its employees qualifies as part of the operating premises so as to permit an employee to recover workers' compensation benefits for an injury she received when she fell in the parking lot while on her way to work. *Harlan Appalachian Regional Hospital* is distinguishable from the subject case in that Schroeder did not receive her injury in a parking area either owned, maintained, or controlled by her employer. She fell and received her injury in the area of the parking lot used by the public generally and separated from the working area of her employer by a two-way vehicular driveway over which her employer had no control.

 The "operating premises" rule must be applied on a case by case basis. In other words, what we are holding is clearly and simply that if an employer provides or maintains a parking lot or other premises for the convenience of its employees, and an employee, while on said premises, sustains a work-connected injury, then the employer is responsible to the employee for workers' compensation benefits. Two factors must be present to fix liability on the employer. First of all, the employer must control the area, and second, a work-related injury must have been sustained on the area. What we are saying is that "operating premises" constitute a part of the work area, and an employee, under those conditions, receiving a work-related injury is in a "work connected activity."

The outcome of the subject action may have been altogether different had Schroeder been an employee of the shopping center. That, however, is not the case, and we are not constrained to further construe the

workers' compensation law so liberally as to lose all sense of proportions, which we would be doing if we permitted an award to be made to Schroeder under the proven facts. The proven facts clearly and unequivocally show that Schroeder's injury did not happen on K-Mart's operating premises. Consequently, there is no liability for her injury on K-Mart.

The decision of the Court of Appeals is reversed, and the judgment of the Hopkins Circuit Court is affirmed.

All concur except CLAYTON, J., who did not sit.