# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: APRIL 29, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0683-WC

WHAS-TV                                                                APPELLANT


V.             ON APPEAL FROM COURT OF APPEALS
                        NO. 2019-CA-0904 WC
          WORKERS' COMPENSATION BOARD NO. 15-WC-60076



BRYAN DERBY;                                                          APPELLEES
HON. STEPHANIE L. KINNEY, ALJ; AND,
WORKERS' COMPENSATION BOARD


## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

WHAS-TV appeals the Court of Appeals' opinion affirming the decision of both the Workers' Compensation Board ("Board") and Administrative Law Judge ("ALJ") determining that Bryan Derby's ("Derby") cervical fusion surgery was compensable. WHAS-TV contends that the ALJ reached a conclusion not supported by substantial evidence in the record. We disagree, and we affirm.

## I. FACTUAL BACKGROUND

In 2015, Derby worked as a cameraman for WHAS-TV. This position required him to carry and hold camera equipment on his shoulder for extended periods of time. That September, Derby felt a severe, shooting pain through his neck and right shoulder while carrying his camera and equipment back to his vehicle.

Derby first sought treatment with his family doctor, Dr. Dhamy Sivamohan. Dr. Sivamohan diagnosed degenerative disc disease in Derby's lumbar spine and cervical intervertebral disc. Despite treatment, Derby's neck and shoulder pain steadily progressed. Dr. Sivamohan concluded that Derby suffered cervical radiculopathy as a result of his degenerative joint disease.

Derby next met with Dr. Ty Richardson, who initially treated Derby's shoulder. At a follow-up appointment in December 2015, Dr. Richardson noted that Derby reported improvement in his right shoulder but also increased numbness and tingling pain in his right forearm and fingers. Dr. Richardson discovered that Derby's cervical spine was stiff and diagnosed cervical stenosis with radiculopathy. At this point, Dr. Richardson recommended referral to either a spine specialist or neurosurgeon.

Upon referral, Derby met with Dr. Venu Vemuri. Dr. Vemuri diagnosed severe cervical stenosis in the cervical spine and recommended cervical fusion surgery. Shortly thereafter, Dr. Warren Bilkey performed an independent medical evaluation (IME). Dr. Bilkey reviewed Derby's work and medical history, noting a gradual onset of shoulder and neck pain related to the carrying of camera equipment. Ultimately, Dr. Bilkey concluded that Derby suffered a work-related injury to the neck and right shoulder in September 2015 and assigned an impairment rating for the neck and shoulder area pursuant to AMA guidelines.

Two physicians subsequently disagreed with Dr. Bilkey's assessment. Dr. Michael Best disagreed with the diagnosis of cervical stenosis. He reported

2

that he suspected that arthritis and aging better explained Derby's symptoms. Similarly, Dr. Michael Moskal concluded that Derby's condition was likely a result of natural aging and unrelated to his work for WHAS-TV. Dr. Bilkey, testified by deposition and filed a supplemental report stating that his opinion had not changed in the time since his initial evaluation.

Based on the foregoing evidence, the ALJ issued an Interlocutory Opinion finding that Derby sustained an injury to his right shoulder and neck during his work for WHAS-TV. The ALJ determined these injuries resulted from cumulative trauma that manifested in September 2015. The ALJ awarded medical benefits, including but not limited to the recommended cervical fusion surgery, and held the case in abeyance pending treatment.

Derby underwent further medical examination following the ALJ's interlocutory order. Dr. Jules Barefoot examined Derby one year after the cervical fusion procedure. Dr. Barefoot noted that Derby reported significant improvement in neck and arm pain following the procedure but observed continuing right shoulder pain. Several months later, Dr. Moskal performed a second evaluation on Derby upon Derby's complaints of neck pain and stiffness while sanding and painting in his house. Dr. Moskal opined that the sensations, and the related cervical fusion, were not related to Derby's work activities. Finally, Dr. Richardson testified by deposition regarding Derby's condition. He believed that Derby's neck condition was dormant prior to his injury in September 2015. Dr. Richardson further opined that Derby's work

3

activities were a contributing factor in rendering this latent condition symptomatic and requiring subsequent medical treatment.

Ultimately, the ALJ reaffirmed her previous finding that the neck and right shoulder injuries were related to the September 2015 injury, entitling Derby to future medical benefits (including the cervical fusion surgery). The ALJ noted that WHAS-TV's failure to timely file a Form 111 constituted an admission of causation on their part.[1] The ALJ further determined that even if WHAS-TV properly filed its response, Derby had provided sufficient evidence to support a finding of causation.

WHAS-TV then appealed to the Board, which affirmed the ALJ's order. The Board found that the ALJ reasonably reached a conclusion supported by substantial, expert medical testimony notwithstanding the evidence to the contrary. The Court of Appeals affirmed the decision of the Board.

## II. ANALYSIS

In reviewing an ALJ's order, an appellate court must consider whether the decision is supported by substantial evidence.[2] Further, this Court will only correct the Board when it "perceives the Board has overlooked or

---

[1] We note that WHAS-TV did fail to timely file its Form 111 response. Pursuant to regulation, the failure to file a timely response results in an admission of all allegations of the application. 803 Kentucky Administrative Regulation (KAR) § 25:010. Both the Board and the Court of Appeals addressed the merits of WHAS-TV's appeal in spite of this procedural default. Likewise, we choose to address the merits of this case.

[2] *Wolf Creek Colleries v. Crum,* 673 S.W.2d 735 (Ky. App. 1984).

misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice."[3] The purpose of review by this Court is to address novel questions of statutory construction; reconsider precedent; or review a question of constitutional magnitude.[4]

WHAS-TV argues that the ALJ's decision was not supported by substantial evidence. It raises two specific contentions in support of this claim: (1) the expert opinions favoring Derby relied on incomplete and inaccurate facts, and (2) the ALJ impermissibly rendered its own medical conclusions unsupported by the record.

By statute, the ALJ is the sole arbiter of questions of fact.[5] Pursuant to this authority, the ALJ possesses the discretion to determine the quality, character, and substance of the evidence.[6] The mere existence of evidence that supports a different conclusion is inadequate to support reversal on appeal.[7] When, however, the factual issue at hand must properly be determined by a medical expert, the ALJ may not disregard the *uncontradicted* conclusion of a medical expert and reach a different conclusion.[8] Further, if a physician's

---

[3] *Active Care Chiropractic, Inc. v. Rudd*, 556 S.W.3d 561, 564 (Ky. 2018) (internal quotations and citations omitted).

[4] *Id.*

[5] *See* Kentucky Revised Statute (KRS) 342.285(1).

[6] *Am. Greetings Corp. v. Bunch*, 331 S.W.3d 600, 602 (Ky. 2010) (internal footnotes omitted) (emphasis added).

[7] *Id.*

[8] *Cepero v. Fabricated Metals Corp.*, 132 S.W.3d 839, 842 (Ky. 2004) (internal quotations and citations omitted) (emphasis added).

opinion is based on a "substantially inaccurate or largely incomplete" medical history, that opinion cannot constitute substantial evidence.[9]

WHAS-TV first contends that the opinions of Drs. Bilkey and Barefoot are based upon inaccurate and incomplete findings. Specifically, WHAS-TV asserts that both opinions and the ALJ's decision fails to account for the fact the December 2015 finding of nerve pain through the forearm and fingers was a separate and distinct finding from the prior examination of neck and shoulder pain. WHAS-TV essentially argues that the December incident was a separate, outside of work injury or condition unrelated to the September injury.

At bottom, this case involved a contest between conflicting medical opinions. The record demonstrates that Dr. Bilkey reviewed the medical records of Dr. Vemuri and the IME findings of Drs. Best and Moskal. Dr. Bilkey specifically disagreed with Drs. Best and Moskal as to the work-relatedness of the injury and the best course of treatment moving forward. Given his review of the medical evaluations preceding his involvement, it is reasonable to conclude that he was aware of emergence of the symptoms in Derby's forearm and finger after the initial injury at the time of his evaluation.

The findings of Drs. Richardson and Barefoot similarly support the conclusion that Derby's issues with his cervical spine were related to the September injury. Dr. Richardson characterized the issues as "dormant" prior to Derby's injury on the job. Dr. Barefoot, in turn, found permanent injuries to the cervical spine and shoulder. There is no support in the record that any of

---

[9] *Id.*

these physicians conducted their evaluations with incomplete or inaccurate findings.

WHAS-TV insists that our decision in *Cepero v. Fabricated Metals Corp.* guides the resolution of this case.[10] *Cepero*, however, presented much more severe gaps in the evaluating physician's knowledge of the claimant's medical history. There, a workers' compensation claimant failed to disclose a prior, severe knee injury to several treating physicians.[11] On review, we determined that the ALJ's order awarding benefits to the claimant was not based on substantial evidence because it relied heavily on the opinions of the physicians who were not aware of the prior injury.[12] The situation here is much different. The ALJ relied on the reports of physicians who had considered multiple reports presenting contrasting findings.

Although WHAS-TV identifies multiple sources of evidence supporting a different conclusion than the ALJ ultimately reached, Derby also presents substantial evidence in support of his claim. Thus, the ALJ appropriately exercised her discretion in determining which evidence to rely upon and her conclusions rely upon a reasonable basis.

WHAS-TV next argues that the ALJ impermissibly reached conclusions on causation unsupported by the medical evidence. In particular, WHAS-TV takes issue with the ALJ's conclusion that symptoms investigated in December 2015 progressed from the September 2015 injury. It insists that this

---

[10] 132 S.W.3d 839 (Ky. 2004).

[11] *Id*. at 840-842.

[12] *Id*. at 843.

conclusion was a medical judgment not supported by the testimony of a medical professional.

We disagree. Multiple evaluations determined that the numbness and pain in Derby's forearm and neck were related to issues in his cervical spine. Dr. Richardson found that Derby's work activities were a contributing factor of this condition and Dr. Bilkey determined that Derby's work activities were a significant factor in rendering his degenerative condition symptomatic. Considered as a whole, these evaluations constituted ample medical evidence for the ALJ to conclude that the cervical fusion surgery, intended to address these issues, was work-related and compensable.

### III. CONCLUSION

The ALJ relied on the assessments of multiple qualified physicians in determining Derby's neck surgery to be compensable. Moreover, there is no suggestion that the physicians relied upon an incomplete or inaccurate medical history in rendering their assessments. This constituted substantial evidence supporting the award of compensation. Accordingly, we affirm.

All sitting. All concur.

COUNSEL FOR APPELLANT:
Walter E. Harding
Boehl Stopher & Graves, LLP

COUNSEL FOR APPELLEES:
Chad Jennings
Jennings Law Offices

COUNSEL FOR THE WORKERS' COMPENSATION BOARD:
Michael Wayne Alvery

Hon. Stephanie Letitia Kinney
Administrative Law Judge